# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | | |
|---|---|---|
| PERLINE THOMPSON et al., | ) | |
| Plaintiffs, | ) | |
| vs. | ) | 3:18-cv-00147-RCJ-WGC |
| UNITED STATES OF AMERICA et al., | ) | **ORDER** |
| Defendants. | ) | |

This cases arises out of various disputes concerning the tribal government of the Duckwater Shoshone Tribe ("the Tribe"). Pending before the Court are two motions to dismiss and a motion to reconsider the dismissal of several Defendants for failure to timely serve them. For the reasons given herein, the Court grants the motion to reconsider in part and grants the motions to dismiss, with leave to amend in part.

**I.     FACTS AND PROCEDURAL HISTORY**

Plaintiffs argue that the United States, through the Bureau of Indian Affairs ("BIA") and other agencies and agents, has "interfere[d] with the judicial processes and election activities of the Duckwater Shoshone Tribe" and failed to "recogniz[] the entire elected tribal council." Plaintiffs complain that federal Defendants have failed to intervene in various tribal disputes, and that the Tribe wrongly imprisoned several persons, but no such person is alleged to currently be in custody—it appears all Plaintiffs previously incarcerated were held only for a few days.

Seven Plaintiffs have sued the United States, the BIA, the Western Nevada Agency of the BIA ("WNA"), the Eastern Nevada Agency Superintendent, the Phoenix Area Director, the Intertribal Council of Nevada, and nine individual Defendants in this Court. Plaintiffs list four counts: (1) an APA challenge to the BIA's approval of Ordinance 83-D-01; (2) an ICRA claim based on various Defendants' denial to Plaintiffs of a venue to file appeals from tribal court decisions by withholding funding for the Intertribal Court of Appeals; (3) an ICRA claim based on various Defendants' alleged corrupt political practices relating to tribal electoral and judicial practices; and (4) a declaratory judgment claim seeking five declarations. Those Defendants who have not been dismissed under Rule 4(m) for failure to timely serve them have moved to dismiss, and Plaintiffs have asked the Court to reconsider the Rule 4(m) dismissals.

## II.   LEGAL STANDARDS

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency, *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983), and dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A court treats factual allegations as true and construes them in the light most favorable to the plaintiff, *NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986), but does not accept as true "legal conclusions . . . cast in the form of factual allegations," *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1071 (9th Cir. 2009). A plaintiff must plead facts pertaining to his case making a violation "plausible," not just "possible." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009) (citing *Twombly*, 550 U.S. at 556) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged."). That is, a plaintiff must not only specify or imply a cognizable legal theory (*Conley* review), he must also allege the facts of his case so that the court can determine whether he has any basis for relief under the legal theory he has specified or implied, assuming the facts are as he alleges (*Twombly-Iqbal* review).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Also, under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record" if not "subject to reasonable dispute." *United States v. Corinthian Colls.*, 655 F.3d 984, 999 (9th Cir. 2011). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

## III.     ANALYSIS

Congress has plenary power over the Indian tribes, *Lone Wolf v. Hitchcock*, 187 U.S. 553, 565 (1903), which exist as "domestic dependent nations," *Cherokee Nation v. Georgia*, 30 U.S. 1, 17 (1831). As a starting point in American history, Indian tribes existed as sovereign nations. *Id.* at 59–60. However, the tribes' sovereignty has been "necessarily diminished" via conquest by other sovereigns, such as England, France, Holland, Spain, and Portugal, all of whom recognized the principal that a conquered people retained the right to occupy the land, but that certain aspects of sovereignty became forfeit. *Johnson v. McIntosh*, 21 U.S. 543, 574–76 (1823).

Congressionally recognized tribes retain all aspects of sovereignty they enjoyed as independent nations before they were conquered, with three exceptions: (1) they may not engage in foreign commerce or foreign relations, *Worcester v. Georgia*, 31 U.S. 515, 559 (1832); (2) they may not alienate fee simple title to tribal land without the permission of Congress, *McIntosh*, 21 U.S. at 574; and (3) Congress may strip a tribe of any other aspect of sovereignty at its pleasure, *Oliphant v. Suquamish Indian Tribe*, 435 U.S. 191, 208 (1978), *superseded on other grounds by* 25 U.S.C. § 1301(2), (4) (1990). In summary, all aspects of sovereignty consistent with the tribes' dependent status, and which have not been taken away by Congress, remain with the tribes.

Because the tribes retain their sovereignty generally, and because that sovereignty predates the Constitution and does not depend upon it, the Constitution does not bind tribal governments with respect to their members. *Talton v. Mayes*, 163 U.S. 376, 382–84 (1896). Any claims against the tribal Defendants under the United States Constitution therefore fail as a matter of law. In 1968, Congress passed the Indian Civil Rights Act ("ICRA") to provide certain protections for Indians as against their tribal governments. These protections roughly parallel the protections afforded by the Bill of Rights, *see* 25 U.S.C. § 1302, but the only remedy available is habeas corpus, *id.* § 1303, not injunctive or declaratory relief, *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58–62 (1978). Any claims against the tribal Defendants under the ICRA therefore also fail as a matter of law to the extent they seek anything other than habeas corpus relief.

### A. The APA Claim Based on Duckwater Shoshone Tribal Ordinance 83-D-01

Plaintiffs complain that Ordinance 83-D-01 was adopted contrary to required tribal legislative procedures. They argue that the BIA's acceptance of the Ordinance is therefore arbitrary and capricious under the APA. The Court dismisses this claim, without leave to amend. The BIA's recognition of a tribal law as presented to the BIA by the Tribe cannot be arbitrary and capricious. Plaintiffs do not allege the tribal government recognized by the BIA did not in fact

present the Ordinance to the BIA as tribal law and that the BIA fabricated the law on its own initiative. Rather, Plaintiffs allege the BIA acted arbitrarily and capriciously in not further investigating whether tribal legislative procedures had been sufficiently adhered to when the Tribe adopted the law before determining that the law presented to it by the tribal leadership was worthy of recognition. This is a matter of the internal affairs of the Tribe that the BIA (and this Court) are powerless to interfere with. Not only is it not arbitrary or capricious for the BIA to respect tribal law as duly adopted when so represented to the BIA by the tribal government, it would constitute an impermissible meddling into internal tribal affairs for the BIA to fail to do so. Moreover, the Ordinance is affirmatively alleged to have been adopted in 1983, thirty-five years before the Complaint was filed, so the affirmative defense of the six-year statute of limitations is evident on the face of the Complaint. *See Turtle Island Restoration Network v. U.S. Dep't of Commerce*, 438 F.3d 937, 942–43 (9th Cir. 2006) (citing 28 U.S.C. § 2401(a)).

**B.     The First IRCA Claim**

This claim is based on various Defendants' denial to Plaintiffs of a venue to file appeals from tribal court decisions by withholding funding for the Intertribal Court of Appeals ("ITCA"). The ICRA does not apply to federal entities, only to Indian tribes, 25 U.S.C. §§ 1301(1), 1302(a), and as noted, *supra*, the ICRA only provides the remedy of habeas corpus, *id.* § 1303. Because the federal Defendants are not amenable to any ICRA claim, and because the claim does not seek habeas corpus relief against any tribal entity, the claim cannot be cured by any set of facts concerning the funding issue and is therefore dismissed, without leave to amend.

**C.     The Second ICRA Claim**

This claim is based on various Defendants' alleged corrupt political practices relating to tribal electoral and judicial practices. A federal court has no subject matter jurisdiction to entertain a suit based on the alleged violation of the law of tribal governance, which is "an internal controversy among Indians over tribal government." *Motah v. United States*, 402 F.2d 1,

2 (10th Cir. 1968). Nor is there any exception to federal sovereign immunity from suit that would permit such a suit against BIA officials. *Id.* at 2 (citing *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). Plaintiffs' complaints concern the internal affairs of the Tribe over which the Court lacks subject matter jurisdiction. *See* Felix. S. Cohen, *Federal Handbook of Indian Law* 126 (1971) ("Such power [of sovereignty] includes the right to define the powers and duties of [tribal] officials, the manner of their appointment or election, the manner of their removal, the rules they are to observe in their capacity as officials, and the forms and procedures which are to attest to the authoritative character of acts done in the name of the tribe."). A tribe may not be sued except where Congress has specifically stripped its sovereign immunity by providing for suit. *See id.* at 283–84 (quoting *Thebo v. Choctaw Tribe of Indians*, 66 F. 372, 373–76 (8th Cir. 1895)); *see also Turner v. United States*, 248 U.S. 354, 358 (1919) ("Without authorization from Congress, the Nation could not then have been sued in any court; at least without its consent."). Plaintiffs identify no statute permitting suit except the ICRA, the sole remedy under which is habeas corpus. Because no set of facts concerning malfeasance in tribal government will give this Court jurisdiction to interfere under the ICRA or otherwise, this claim is dismissed, without leave to amend.

**D.     The Declaratory Judgment Claim**

Plaintiffs seek five declarations. The Court's jurisdiction to address the merits as to any of the requested declarations must rest, if not upon a more specific statute, at a minimum on the relevant issue being a matter of federal common law relating to the Indian tribes such that the Court can address the question under 28 U.S.C. § 1331. *Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 850–53 (1985).

First, Plaintiffs ask the Court to declare that the United States is acting unreasonably, arbitrarily, and capriciously in denying the authority of Defendant Wright to act as a judge for the Tribe. Most of the allegations actually appear to complain that Wright acted as a judge when he

allegedly was not properly appointed. In any case, the Court cannot adjudicate an internal tribal matter of whether a tribal judge was or was not properly appointed under tribal law.

Second, Plaintiffs ask the Court to declare that Defendant Mike's administration's actions are illegal, in violation of Plaintiffs' civil rights, and in violation of the RICO statute. As already noted, the U.S. Constitution does not apply to Indian entities, Plaintiffs do not appear to seek habeas corpus relief such that the ICRA might apply, and the elements of a civil RICO claim have not been pled.

Third, Plaintiffs ask the Court to declare that the United States is bound by law to provide adequate funding for the ITCA under its trust responsibility. The Court dismisses this claim, because "the organization and management of the trust is a sovereign function subject to the plenary authority of Congress." *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 174 (2011). If Congress had mandated certain funding, and an agency responsible for distribution of the funds had failed to make disbursements as required by statute, that would be another matter, *id.* at 177, but Plaintiffs have not alleged such facts. Rather, Plaintiffs argue that the United States' refusal to fund the ITCA in the first instance is a violation of its trust duties, which is a non-justiciable political question. *Id.* at 174 (collecting cases).

Fourth, Plaintiffs ask the Court to declare that the BIA has since March 22, 2018 unlawfully and unreasonably denied the Eastern Nevada Tribes the right to file appeals in the ITCA. This claim is redundant with the previous claim. Plaintiffs do not appear to argue that the BIA has wrongly interfered with the operation of the tribal courts, e.g., by usurping the operation of a functioning tribal court and refusing to permit members of certain tribes from filing appeals therein. Rather, Plaintiffs appear to argue that the failure to fund the ITCA has had the result of causing that court to be unable to operate (the tribes themselves presumably have also refused to fund the ITCA from their own treasuries), and hence, the Eastern Nevada Tribes have not been able to file appeals in that forum. The Court dismisses this claim for the same reason it dismisses

the previous claim. *See id.*

Fifth, Plaintiffs ask the Court to declare that Plaintiffs have no ethical, fair, and unbiased court in which to file appeals. The Court dismisses this aspect of the claim, which is a dispute concerning the internal, political affairs of the Tribe, without leave to amend.

In summary, the declaratory judgment claim is dismissed, with leave to amend to allege that the BIA (or another agency) has failed to comply with a particular law or regulation requiring funding for the ITCA. Plaintiffs may also amend to plead a separate RICO claim against individual Defendants, if they wish.

Finally, because the Tribe is immune and therefore cannot be joined involuntarily, and because the Tribe is a necessary, indispensable party under Rule 19, the entire case must be dismissed under Rule 12(b)(7). *Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1022–25 (9th Cir. 2002). A tribe's interest in sovereign immunity so greatly outweighs a plaintiff's interest in litigating his claims that there is "very little room for balancing of other factors" under Rule 19(b) in such cases. *Id.* at 1025. This does not necessitate denial of leave to amend, because an amended complaint could potentially state claims against non-immune Defendants in a way not necessitating joinder of the Tribe itself.

The Court grants the motion to reconsider the 4(m) dismissals, except as to Defendant Wright. Plaintiffs note that they did in fact serve the dismissed Defendants (minus Wright) but neglected to timely file proof of service. The Court finds this neglect to have been excusable for *pro se* Plaintiffs. Plaintiffs have attached their proof of service to the motion. The Court makes no substantive ruling at this time as to the sufficiency of service but finds excusable neglect in failing to file proof of service. The result in the present context is that Plaintiffs may name in an amended complaint any parties previously dismissed under Rule 4(m) (except Wright), within the scope of the claims for which Plaintiffs have been given leave to amend. *Cf. Del Raine v. Carlson*, 826 F.2d 698, 705 (7th Cir. 1987). The Court needn't vacate the previous order.

**CONCLUSION**

IT IS HEREBY ORDERED that the Motions to Dismiss (ECF Nos. 10, 13) are GRANTED, with leave to amend in part. Plaintiffs may amend the declaratory judgment claim to allege that the BIA (or another agency) has failed to comply with a particular law or regulation requiring funding for the ITCA or to allege a separate RICO claim. If Plaintiffs do not amend within twenty-eight (28) days, the Court may dismiss the entire case with prejudice without further notice.

IT IS FURTHER ORDERED that the Motion for Reconsideration (ECF No. 26) is GRANTED IN PART. To the extent Plaintiffs seek to name in an amended complaint any Defendants previously dismissed for failure to serve, they may do so, with the exception of Defendant Wright.

IT IS SO ORDERED.

DATED: This 7th day of November, 2018.

_____
ROBERT C. JONES
United States District Judge